THE STATE v. MAHANEY, Appellant.

#### Division Two, November 12, 1901.

Appeal: FAIR AND IMPARTIAL TRIAL. Where defendant had a fair and impartial trial, and no errors appear in the indictment or record, the judgment will be affirmed.

Appeal from Maries Circuit Court.—*Hon. James E. Hazell,* Judge.

AFFIRMED.

*Jno. O. Holmes, J. J. Crites* and *J. W. Mosby* for appellant.

*Edward C. Crow,* Attorney-General, for the State.

(1) The indictment in this case is sufficient. It is true it does not charge upon what particular part of the body the wound was inflicted, but under our decisions and statutes it is sufficient now to charge the wound had been inflicted in and upon the body, without specifying the part of the body. State v. Edmundson, 64 Mo. 399; 88 Mo. 402; State v. Arnewine, 126 Mo. 571; 76 Mo. 35; Kelley's Criminal Law, sec. 484. (2) There was no exception at the time to the failure of the court to instruct on all the law of the case, and, therefore, the ninth ground in the motion for a new trial, that the court refused to properly instruct the jury on all the law in the case will not be reviewed in this court. (3) The crime was committed in 1893. The first indictment was found in

1894, and was for some reason misplaced, and was not found until after the second indictment was returned. The second indictment was returned in October, 1900. The defendant, from 1893 to 1900, was a fugitive from justice according to his own testimony, and the rule of law is that the statute of limitations will not avail any person who shall flee from justice; and in all cases the time in which the defendant shall not have been an inhabitant of or usually resident within this State, shall not constitute any part of the limitation prescribed. Absence from the State or from his usual place of abode by the defendant for the purpose of avoiding arrest and prosecution, amounts to fleeing from justice. 48 Mo. 240; 68 Mo. 266; 89 Mo. 588.

BURGESS, J.—The defendant Mahaney was indicted at the April term, 1894, of the circuit court of Maries county, but he left the country, and was not apprehended until the year 1900. This indictment was misplaced and could not be found, so another indictment was preferred for the same offense in October, 1900, and thereafter the first indictment was found.

The facts as disclosed by the record are, that on the night of the twenty-third of November, 1893, at Joyce's house, in the country, a dance was to be held and that the neighbors, men and women, had gathered there. Joyce himself had been off at work some place and came in shortly after night, bringing some candy for his little children. It seems that Joyce had two stepsons, Jim and Charlie Moman, and they were present when Joyce returned. Jim Moman wanted some of the candy and Joyce refused to give it to him and Jim became quarrelsome, and his brother remonstrated with him, and then the brothers had some trouble; then one Brown, who was present began to joke Jim Moman, and both of the boys turned on him, and an altercation ensued.

Dolph Mahaney, the defendant, and his brother George had gone to the dance and were present in the room when the transaction above related occurred. About the time of the close of the altercation between Brown and the Moman boys, George Mahaney holloed "Hurrah for Charley Moman!" or something to that effect. James Cress, the deceased, was present at the time. He was a brother-in-law of Jim Moman. When George Mahaney made this statement, James Cress ran around where George was and shook his fist in his face. About this time Joyce interfered, and told the boys if they wanted to have a racket they must go out doors. George Mahaney and Cress and the Moman boys and several others went out doors and were quarreling with one another when Joyce and defendant and some others came up and interfered and told them to desist. About this time Jim Moman discovered that Dolph Mahaney, the defendant, was there, and he made some remark, and Dolph Mahaney got over the fence which was nearby, and east of the house, and as he got over the fence, the crowd moved along up the fence and Jim Moman, as the evidence showed, put his foot on the fence and started to get over; Cress was standing about this time right by the fence and close to Jim Moman. At this juncture the evidence discloses that the defendant drew his pistol from his overcoat pocket and fired a shot, taking effect in Cress's body at a point near the line of his pants pocket and penetrated to the back, lodging near the back bone, from which place it was extracted some two hours later by Dr. Bowles. Cress was taken in the house and placed upon the bed and a doctor summoned.

Defendant departed and went to his uncle's, and soon after left the country. He returned in 1895 and in 1896, but did not give himself up as he claimed the feeling was hostile to him and he would not give himself up for trial because he would not get a fair and impartial hearing, and on the ad-

vice of his friends he left again each time.

The evidence of the defendant tended to show that Cress had a knife in his hand at the time he was quarreling with George Mahaney, the defendant's brother, and that about the time he ceased quarreling with George he started toward the defendant, and that Jim Moman also started toward the defendant threatening to lick him.

There was a conflict in the testimony of the State and the defense as to whether Cress was shot on the inside or the outside of the fence. The defendant claimed, and several of his witnesses testified, that Cress had gotten over the fence and was shot on the outside after being warned by defendant not to follow him over the fence. Defendant himself testified that Jim Moman struck at him with a knife as he, the defendant, got over the fence. There was some evidence of bad feeling between the Mahaney boys and the Moman boys and Cress and some others.

The defendant was finally located, in the year 1900, in Oklahoma, and arrested and brought back to Maries county and tried and convicted of manslaughter in the fourth degree and sentenced to two years in the penitentiary.

After the usual motions were made and overruled, he perfected his appeal to this court, assigning various grounds of error in the action of the lower court at the trial. The defendant is not represented in this court, but we have gone through the record with much care in order to discover if possible any error prejudicial to defendant, and have been unable to do so. In the motion for new trial many errors are assigned, but without anything upon which to bottom them. In the motion in arrest the sufficiency of the indictment is questioned, but the grounds assigned are untenable, as it is in form often approved by this court. The defendant had a fair trial and had

no cause to complain of anything that occurred during the same. Finding no reversible error in the record, the judgment is affirmed. All concur.